# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **United States of America,** | § | |
| **Respondent/Plaintiff** | § | |
| | § | **Crim. No. 4:10-cr-888** |
| **vs.** | § | **Civil No. 4:16-cv-1423** |
| | § | |
| **Bich Xuan Dang,** | § | |
| **Petitioner/Defendant** | § | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S 28 U.S.C. §2255 MOTION and MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America ("the Government"), by and through the United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, files this Response to Petitioner's Motion for Relief under 28 U.S.C. § 2255 and Motion for Summary Judgment. The Government would show the Court as follows:

## I.

## JURISDICTION

Bich Xuan Dang ("Dang") challenges the judgment imposed by this Court on May 16, 2012, and entered by the District Clerk on May 22,

1

2012.  (D.E.[1] 50.) Dang did not file an appeal.

The petitioner has one year from the date on which the judgment of conviction became final to file his §2255 motion. Dang's conviction became final on June 5, 2012, the last day on which he could have filed a notice of appeal.  Dang had one year from June 5, 2012, the date on which the judgment of conviction became final, to file his 2255 motion. 28 U.S.C. §2255(f)(1). The instant 2255 Motion was filed on May 13, 2016, when he placed the motion in the prison mailing system.  (D.E. 58.)  The motion is untimely.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2255.

## II.

## STATEMENT OF THE CASE

### A. Statement of Facts Underlying the Conviction.

On December 7, 2009, law enforcement officers obtained a search warrant for a residence located in Katy, Texas, for suspected narcotics trafficking activities.  (D.E. 41 "PSR" ¶¶4, 5.)  The officers entered the

---

[1] "D.E." refers to Docket Entry in the criminal docket for Case no. 4:10-cr-888, styled *United States v. Bich Xuan Dang,* filed in the Southern District of Texas, Houston Division, unless otherwise indicated.

residence and found Bich Xuan Dang inside the living room of the house, just past the front door. (*Id*. ¶5.) The officers found a shoulder holster for a handgun attached to the bed post where Dang was sitting, as well as a handgun under a pillow on the couch next to the bed where Dang was sitting. (*Id*.) Officers also found that other than the room where Dang was sitting, the house had been converted to cultivate marijuana plants. (*Id*. ¶6.) Of the six rooms converted for marijuana cultivation, only two rooms contained live marijuana plants at the date of the execution of the search warrant. (*Id*.) A total of 289 live marijuana plants and a tub of dried marijuana plants were recovered. (*Id*.) The total weight of all the marijuana recovered from the residence was 29.7 kilograms. (*Id*.)

## B. Course of Proceedings and Prior Disposition.

### 1. Re-Arraignment.

In December 2010, a federal grand jury in Houston, Texas, returned a three-count indictment charging Dang with possessing with intent to distribute more than 100 plants of marijuana, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(B)(vii) (Count 1); possessing a

firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1) (Count 3). (D.E. 1.)

On February 22, 2012, Dang entered a plea of guilty to Count 1 of the indictment with a written plea agreement. (D.E. 35, 66.) Under oath, Dang stated that no one had threatened him or tried to force him to plead guilty, and he was entering into his plea knowingly and voluntarily. (D.E. 66 at pp. 3-5.) Dang further affirmed that he was satisfied with his legal representation, understood the rights he was giving up by pleading guilty, and understood the advisory sentencing guidelines. (*Id.* at pp. 5-7.) Dang also stated that the factual basis the prosecutor recited was true, that he understood the maximum penalty he was facing, that he was aware of the waiver of appellate rights contained in the plea agreement, and that he understood the waiver and how it would affect his rights. (*Id.* at pp. 8-12.)

The waiver of appellate rights as contained in his plea agreement provided that:

8.     The defendant is aware that 18 U.S.C. § 3742 affords a

defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in 18 U.S.C. § 3742. Additionally, the defendant is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post- conviction proceeding, including but not limited to proceedings authorized by 28 U.S.C. §2255. In the event that the defendant files a notice of appeal following sentencing, the United States will assert its rights under this Agreement and seek specific performance of this waiver.

(D.E. 35 ¶8.)

The Court found that Dang was competent to enter a plea and that his guilty plea was knowing, voluntary, and supported by an independent factual basis. (D.E. 66 at p. 13.)

2. <u>Sentencing.</u>

In the presentence report prepared in this case, the probation officer assigned Dang a base offense level of 18 for the amount of marijuana involved. (PSR ¶13.) The base offense level was increased by two levels for possessing a firearm, pursuant to U.S.S.G. §2D1.1(b)(1). (*Id.* ¶14.)

Pursuant to U.S.S.G. §4B1.1, a defendant is deemed a career

offender and subject to an enhanced base offense level if the defendant was at least eighteen years old at the time of the instant offense and the defendant had at least two prior felony convictions for either a crime of violence or a controlled substance offense.  A crime of violence is defined as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. §4B1.2(a).  Commentary to the guidelines provides further definition and clarifies that "crime of violence" includes:

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, **robbery**, arson, extortion, extortionate extension of credit, and **burglary of a dwelling**.  Other offenses are included as "crime of violence: if (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e. expressly charged) in the count of which the defendant was convicted involved the use of explosives (including any explosives material or destructive device) or, by its nature presented a serious potential risk of physical injury to another.

U.S.S.G. §4B1.2 cmt. n. 1 (emphasis added).

Dang was 36 years old at the time he committed the offense. Dang also had a prior Texas state conviction for burglary of a habitation with intent to commit a felony[2] as well as an aggravated robbery conviction, which resulted in him being deemed a career offender under U.S.S.G. §4B1.1, and his base offense level was enhanced to 34. (*Id.* ¶¶21, 28, 31, 32.) With a three-level reduction for acceptance of responsibility, his total offense level was 31, with a Criminal History Category of VI. (*Id.* ¶¶22, 23, 37.) Dang's advisory guideline range was 188 to 235 months. (*Id.* ¶59.)

The sentencing hearing was held on September 16, 2013. (D.E. 53.) Dang had no objection to the PSR. (D.E. 40.) After considering all the sentencing factors, the Court imposed a below-guidelines sentence of 140 months, to be followed by a four-year term of supervised release. (D.E. 53 at pp. 16-17.) The Court did not impose any fine, but did impose a mandatory special assessment of $100. (*Id.*)

---

[2] The indictment and the judgment in the state case indicate that Dang was convicted of burglary of a habitation with intent to commit theft, a first degree felony. *See* Attachment A. The language of the indictment and the judgment tracks the statutory language of Texas Penal Code §30.02(a)(1), which is a predicate crime of violence under U.S.S.G. §4B1.2. *See United States v. Garcia-Mendez*, 420 F.3d 454, 456-57 (5th Cir. 2005).

# III.

# ISSUE RAISED

In the instant motion, Dang submits a single issue for collateral review:

(1) His sentence under the career offender provision of the U.S.S.G. §4B1.1 is unconstitutional because his prior conviction for burglary of a habitation does not constitute a predicate crime of violence to deem him a career offender under U.S.S.G §4B1.1 after *Johnson v. United States*, 135 S. Ct. 2551 (2015).[3]

Dang has already waived certain appeal rights, including the right to collaterally attack his sentence as part of his written plea agreement. The Government seeks to enforce the waiver of appellate rights as contained in the plea agreement for the reasons discussed as follows.

---

[3] Dang does not challenge his prior conviction for aggravated robbery as failing to qualify as a predicate crime of violence under U.S.S.G. §4B1.1, but even if he had, his challenge would fail. *See United States v. Guardiola*, 236 Fed. App'x 93, 95 (5th Cir. 2007)(*per curiam*)(Texas aggravated robbery is a predicate violent felony because it has an element the use, attempted use, or threatened use of physical force against the person of another).

# IV.

## MOTION FOR SUMMARY JUDGMENT AND SPECIFIC ENFORCEMENT OF THE PLEA AGREEMENT

### A.  The Effect of *Welch* and *Johnson* on Dang's Case

In *Johnson v. United States*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e), is unconstitutionally vague. 135 S. Ct. at 2557.  ACCA gives three definitions of "violent felony."  First, § 924(e)(2)(B)(i) covers any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  This is known as the "elements clause."  *See Welch v. United States*, 136 S. Ct. 1257, 1261 (2016).  Second, § 924(e)(2)(B)(ii) covers any offense that "is burglary, arson, or extortion, [or] involves use of explosives, . . . ."  This is known as the "enumerated crimes clause."  Third, the ACCA defines "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  This is called the "residual clause."  *See Johnson*, 135 S. Ct. at 2556.  In *Johnson*, the Supreme Court addressed the residual clause, holding that "an increased sentence under the

residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563. More recently, the Supreme Court held that the rule announced in *Johnson* is retroactive because it is a substantive rule of constitutional law. *See Welch*, 136 S. Ct. at 1268. The Supreme Court made clear, however, that its decision did not extend to the elements clause or the enumerated crimes clause of the ACCA's definition of violent felony. *Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."); *see also Welch*, 136 S. Ct. at 1261 ("It is the residual clause that *Johnson* held to be vague and invalid.").

In *Welch*, the Supreme Court held that the rule announced in *Johnson*, namely, that the residual clause of the Armed Career Criminal Act ("ACCA") is unconstitutionally vague, applied retroactively because it was a substantive rule. 136 S. Ct. at 1265. The Court explained that a constitutional ruling is substantive and thus retroactive when the decision places "particular conduct or persons

covered by the statute beyond the State's power to punish." *Id*. In contrast, the Court stated that procedural rules, *i.e.*, those that "regulate only the manner of determining the defendant's culpability" do not apply retroactively. *Id*. (emphasis in original), *quoting Schriro v. Summerlin*, 542 U.S.348, 353, 124 S. Ct. 2519 (2004). Applying this distinction, the Court held that *Johnson* announced a substantive rule because it had the effect of changing the statutory range of punishment that a court could impose under ACCA. *Welch*, 136 S. Ct. at 1265.

Here, however, Dang was not charged with being a felon-in-possession in violation of 18 U.S.C. §924, nor sentenced under the residual clause of the ACCA. Accordingly, *Johnson* and *Welch* is not applicable to him. Instead, Dang's motion is premised on two claims: (1) *Johnson* should be extended to U.S.S.G.§ 4B1.2(a)(2) (defining "crime of violence"), and (2) it should likewise apply retroactively on collateral review to the guideline under which he was sentenced.

Recently, the Supreme Court has granted a petition for certiorari in *Beckles v. United States*, No. 15-8544 (June 27, 2016), on the following questions:

(1) Whether J*ohnson v. United States* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in United States Sentencing Guidelines (U.S.S.G.) § 4B1.2(a)(2) (defining "crime of violence")[4];

(2) whether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable on collateral review; and

(3) whether mere possession of a sawed-off shotgun, an offense listed as a "crime of violence" only in commentary to U.S.S.G. § 4B1.2, remains a "crime of violence" after *Johnson.*

Questions Presented, *Beckles v. United States*, No. 15-8544, available at http://www.supremecourt.gov/qp/15-08544qp.pdf.

Dang's base offense level was properly enhanced under the career offender provisions of the sentencing guidelines, U.S.S.G. § 4B1.2(a), because his prior convictions for burglary of a habitation with intent to commit theft and aggravated robbery qualify as enumerated crime of violence, and *not* under the residual clause in the U.S.S.G. § 4B1.2(a)(2); thus, any decision in *Beckles* would not affect Dang's case. *See* U.S.S.G. §4B1.2 cmt. n. 1.

---

[4] The residual clause in U.S.S.G. § 4B1.2(a)(2) defines crimes of violence as: ". . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."

**B. Dang's Waiver of His Right to File a 2255 Motion is Unaffected by *Johnson*.**

Dang's waiver of his right to appeal and to collaterally attack his sentence was found by this Court to be knowing and voluntary during the re-arraignment hearing. That waiver should apply to his motion seeking to raise an issue based on *Johnson*, because *Johnson* is not yet made retroactively applicable to guideline cases. Such waivers are generally enforceable absent a showing of a manifest injustice or miscarriage of justice.

Claims of an incorrectly calculated guideline range have been held not to meet that standard. *See, e.g., United States v. Reed*, 37 F.3d 630 (5th Cir. 1994) ("A misapplication of the sentencing guidelines does not constitute a constitutional violation and is outside the scope of relief provided by a § 2255 motion. Therefore, no miscarriage of justice will result in the Court's refusal to review this issue.") (*citing United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992)). Moreover, an error in applying the guidelines does not result in an illegal sentence because the ultimate sentence imposed remains within the limits authorized by Congress. *See United States v. Ashqar*, 582 F.3d 819, 825 (7th Cir.

2009).

Waivers have been applied to substantive rules that issued subsequent to the waivers. *See, e.g., United States v. Burns*, 433 F.3d 442 (5th Cir. 2005) ("an otherwise valid appeal waiver is not rendered invalid, or inapplicable to an appeal seeking to raise an issue based on [*United States v.*] *Booker*[543 U.S. 220 (2005)] or [*United States v.*] *Fanfan*, merely because the waiver was made before *Booker*."); *United States v. Taiwo*, 168 F. App'x. 596 (5th Cir. 2006) (on remand from the Supreme Court)(citing *Burns*, 433 F.3d at 445).

Other circuits have agreed that language in plea agreements waiving "all rights conferred by [§3742] to appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed" is broad enough to cover any issues arising "from *Apprendi* and its progeny, up to and including *Booker*." *United States v. Rubbo*, 396 F.3d 1330 (11th Cir. 2005), cert. denied. ("The right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement. Broad waiver language covers those grounds for appeal."); *see also United States v. Green*, 405 F.3d 1180 (10th Cir. 2005) (same); *United*

*States v. West*, 392 F.3d 450 (D.C. Cir. 2004) (same); *United States v. Blick*, 408 F.3d 162 (4th Cir. 2005); *United States v. Lockett*, 406 F.3d 207, 212–14 (3d Cir. 2005) (upholding a valid waiver of appellate rights even in light of a subsequent holding by the Supreme Court that the pre-*Booker* regime under which appellant was sentenced was unconstitutional).

As the Government has already set out in its facts section, Dang signed a written plea agreement in which he agreed to waive his right to appeal the conviction and the sentence, including the right to collaterally attack his conviction or sentence under 28 U.S.C. §2255.

In Dang's case, the Court has determined that the plea, including the waiver of appeal and collateral attack, was knowing and voluntary. The sentence imposed of 140 months did not exceed the statutory maximum, but was below the correctly computed advisory guideline range of 151 months to 188 months.

In cases such as this one, where the record establishes that the petitioner understood the nature of the charge against him and the direct consequences of his act, the rudimentary demands of a fair

proceeding and a knowing, voluntary plea are satisfied. *Wright v. United States*, 624 F.2d 557, 561 (5th Cir.1980). "The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement." *United States v. Burns*, 433 F.3d at 445 (5th Cir. 2005); *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002). "To determine whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, [this court will] . . . conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).

The Court expressly found that Dang's plea was voluntary, and entered a finding of guilty. Moreover, Dang raised no meritorious issue in his §2255 motion that affects the voluntariness of his plea and the waivers, or otherwise renders this Court's findings of a knowing and voluntary plea and waivers inaccurate. The Government moves for specific enforcement of the waiver provision in the plea agreement.

# V.

## ALTERNATIVE MOTION TO DISMISS BASED ON UNTIMELINESS

In the alternative, the Government moves this Court to dismiss Dang's §2255 motion with prejudice, for the reasons discussed below, on the ground that the Government's motion, supported by the applicable law, conclusively shows that no relief is appropriate because the motion is untimely filed.

### A. Dang's §2255 motion is untimely.

Dang's §2255 Motion is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA provides a one-year limitation period for filing federal habeas corpus petitions. The provisions of 28 U.S.C. §2255 set forth four different scenarios that start the running of the one-year limitations period:

> The limitations period shall run form the latest of -
> **(1) the date on which the judgment of conviction becomes final**;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> **(3) the date on which the right asserted was initially**

**recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;** and

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f) (emphasis added).

Dang's conviction became final on June 5, 2012, the last day on which he could have filed a notice of appeal. Dang had one year from June 5, 2012, the date on which the judgment of conviction became final, to file his 2255 motion. 28 U.S.C. §2255(f)(1). The instant 2255 Motion was not filed until May 13, 2016, and was not timely filed under §2255(f)(1). It is well-established that the AEDPA limitations period is strictly construed. *Fierro v. Cockrell*, 294 F.3d 674, 684 (5th Cir.2002) ("Congress has imposed a strict one-year limitations period for the filing of all habeas petitions under the AEDPA, subject only to the narrowest of exceptions."). Having filed his motion several years past the deadline with no factual basis for equitable tolling, Dang's motion, is, therefore, barred by the AEDPA statute of limitations. Accordingly, his Motion should be dismissed as untimely pursuant to 28 U.S.C. §2255(f)(1).

Dang's only argument that his motion was timely filed is to fall under §2255(f)(3).  In this case, § 2255(f)(3) does not apply to Dang's 2255 Motion because he has failed to assert a claim based upon a newly recognized right by the Supreme Court that was made retroactively applicable to cases on collateral review.  As discussed above in section IV, his argument that his motion was timely filed under (f)(3) is equally unavailing as *Johnson* is inapplicable to his case as he was not sentenced under the residual clause of the ACCA.

## VI.

## EVIDENTIARY HEARING

A section 2255 motion requires a hearing unless the Government's motion and the record of the case conclusively show that no relief is appropriate.  28 U.S.C. § 2255; Fed. R. Civ. P. 8(a); *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983).  The need for an evidentiary hearing depends upon an assessment of the record.  If the Court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing.  If the record is adequate to fairly dispose of the allegations, the Court need inquire no further.  *United States v. Smith*,

915 F.2d 959, 964 (5th Cir. 1990). Here, Dang has clearly not alleged the denial of a constitutional right, and has not alleged any specific information in support of that claim. Based on the record, an evidentiary hearing is not warranted in this case.

## VII.

## CERTIFICATE OF APPEALABILITY

Before Dang can perfect an appeal from an order denying him relief under 28 U.S.C. § 2255, he must secure a certificate of appealability. 28 U.S.C. § 2253. "A certificate of appealability may issue pursuant to 28 U.S.C. § 2253(c), 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *United States v. Ratliff*, 719 F.3d 422, 424 (5th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)). Here, reasonable jurists would not debate the correctness of a holding that Dang has failed to make a substantial showing that he was denied any of his constitutional rights.

## VIII.

## CONCLUSION

On the basis of the foregoing, the Government moves the Court to

grant the Government's motion to dismiss based on Dang's failure to show that he would be entitled to relief under 28 U.S.C. §2255.

Respectfully sworn and submitted,
KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:    /s/ Sonah Lee
SONAH LEE
Assistant United States Attorney
Attorney for Respondent

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Response To Motion for Relief under 28 U.S.C. § 2255, was electronically filed via ECF with the U.S. District Court and mailed on this the 5th day of August 2016 via certified mail, return receipt requested to:

Bich Xuan Dang
82826-279
FCI
PMB 100
Talladega, AL 35160

/s/ Sonah Lee
SONAH LEE
Assistant United States Attorney